UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN ERIN BINNS | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION | ) |
| Washington DC, 20535 | ) |
| | )   Case No: 1:20-cv-03554 (CJN) |
| DEPARTMENT OF JUSTICE | ) |
| Washington DC, 20530 | ) |
| | ) |
| CENTRAL INTELLIGENCE AGENCY | ) |
| Washington DC, 20505 | ) |
| | ) |
| US SPECIAL OPERATIONS COMMAND | ) |
| 7701 Tampa Point Blvd | ) |
| MacDill AFB, FL 33621 | ) |
| | ) |
| Defendants. | ) |

_____

## AMENDED COMPLAINT

1. This is an action under the Freedom of Information Act, 5 USC § 552 ("FOIA") and the Privacy Act, 5 USC § 552a ("PA"). Plaintiff John Erin Binns seeks to compel the Federal Bureau of Investigation ("FBI"), the Department of Justice ("DOJ"), US Special Operations Command ("USSOCOM"), and the Central Intelligence Agency ("CIA") to comply with their obligations under FOIA and the Privacy Act.

## JURISDICTION AND VENUE

2. The court has jurisdiction over this action pursuant to 28 USC § 1331, 5 USC § 552a(g)(1)(B) and 5 USC § 552(a)(4)(B) . Venue lies in this district under 5 USC § 552(a)(4)(B) and 5 USC § 552a(g)(5).

## PARTIES

3. Plaintiff John Erin Binns is a 21 year old victim of government experimentation and harassment, an ISIS terror suspect, and a resident of Izmir, Turkey. Plaintiff is a bona fide victim of two different conspiracies known as "gang stalking" and "electromagnetic torture".[1]

4. Plaintiff is a US citizen who was born in Virginia.

---

[1] The harassment targeting Plaintiff included but was not limited to: illegal wiretaps and unauthorized disclosure of the resulting intercepted communications, hiring strangers to shout death threats at Plaintiff on a daily basis, spyware infections and hacking on Plaintiff's electronic devices, overt photography using professional cameras with the flash turned on, defamation campaigns against Plaintiff by individuals who worked as informants for the CIA, assaults and sleep deprivation torture using microwave directed energy weapons, drugging incidents which caused gastrointestinal and mental problems, and the bribery of Plaintiff's former friends and associates with Bitcoin payments. The CIA appears to be using a modern version of a psychological warfare technique called Zersetzung, which was an East German Stasi government program to repress alleged political opponents and drive them to suicide or incarceration.

5. Plaintiff is currently under investigation by the FBI's Anchorage field office for his alleged participation in the Satori botnet conspiracy. The FBI is investigating or has investigated Plaintiff for his alleged involvement in other cybercrime cases as well.

6. Defendants DOJ, CIA and USSOCOM are agencies within the meaning of 5 USC § 552(f) and 5 USC § 552a(a)(1).

## FACTUAL BACKGROUND

7. In 2017, Plaintiff's Skype account was subpoenaed by the FBI after an FBI Confidential Human Source ("CHS") and CIA informant named Azaiah Crosswhite gave Plaintiff's Skype username to his handler.

8. When Plaintiff's Skype account was subpoenaed, he had his Skype location set to "Latakia, Syria", and an email address ("Email #1") was tied to his account.

9. The FBI was able to find Plaintiff's real identity, as Plaintiff had previously used Email #1 on his US passport application in 2015.

10. Because Plaintiff had his Skype location set to "Latakia, Syria", the FBI believed that Plaintiff was living in Syria and opened a terrorism investigation against him.

11. The FBI sent sixteen requests through the Europol Information System and INTERPOL asking for information on Plaintiff's whereabouts and his border crossings.

12. On October 11, 2017, Arthur Gong from the Department of Homeland Security interrogated Plaintiff at London Heathrow Airport regarding his alleged travel to Syria.

13. From November 2017 to January 2018, Plaintiff was allegedly a member of the Satori botnet conspiracy.

14. Three of the participants in the Satori botnet conspiracy (Aaron Sterritt, Logan Shwydiuk and Kenneth Currin Schuchman) were indicted in the District of Alaska by the DOJ in 2018 and 2019.

15. In 2018, Plaintiff left the United States and went to Izmir, Turkey through Canada and the Netherlands.

16. The CIA placed Plaintiff under physical and electronic surveillance while he was in Izmir. Several of Plaintiff's mobile phones were hacked and infected with spyware using 0-day software exploits, and Plaintiff's computer monitor was wiretapped by CIA contractors operating a TEMPEST receiver from a nearby apartment.

17. 0-day exploits are cyberattacks which use software vulnerabilities unknown to the manufacturer of a device and antivirus companies in order to remotely take control of a computer.

18. A TEMPEST receiver is any device which picks up electromagnetic emissions from a computer monitor and enables the user to view whatever is displayed on the monitor.

19. Plaintiff was assigned the CIA cryptonym "RAVEN".

20. The CIA contractors who were hired to place Plaintiff under physical surveillance broke into unoccupied apartments near Plaintiff's home using lockpicking tools.

21. In 2018, two CIA contractors broke into an unoccupied apartment facing Plaintiff's bedroom. They then recorded a naked video of Plaintiff, which was later used to try and blackmail Plaintiff into working for the CIA. This video was shown to both Azaiah Crosswhite and Kenneth Currin Schuchman.

22. In July 2018, Kenneth Currin Schuchman was working as an FBI CHS and CIA informant. Schuchman attempted to entrap Plaintiff on child pornography charges and tried to make Plaintiff buy Stinger missiles from a fake website operated by the FBI. Schuchman also attempted to make Plaintiff click on a link to a website which contained a 0-day exploit.

23. From August 2018 to July 2019, Plaintiff was repeatedly stalked and maliciously harassed by CIA contractors, in violation of 18 USC § 2261A.

24. On several occasions, Plaintiff observed a male CIA contractor shining a red laser pointer into his room using a gun scope. On other occasions, Plaintiff observed the CIA contractors pointing a brick shaped device with buttons (a psychotronic weapon) at his head. Sometimes the CIA contractors would be wearing night vision goggles.

25. A psychotronic weapon is any portable device which uses extremely low frequency amplitude modulated SHF/EHF microwaves in order to remotely interfere with a target's nervous system.

26. On one occasion in 2018, Plaintiff saw a male CIA contractor aiming a paint sprayer at Plaintiff's bedroom window. Plaintiff then remembers feeling dizzy and witnessing two men breaking into his home. Plaintiff later woke up in his bed. Plaintiff believes that

he was drugged using some type of anesthetic gas or spray by CIA contractors so that they could break into his home.

27. On multiple occasions in 2018 and 2019, Plaintiff was half-asleep in his bed and witnessed CIA contractors bringing a microwave oven with no door (a microwave oven weapon) out onto a balcony facing his bedroom. Plaintiff remembers observing a man plugging the oven into an extension cord and aiming it at his sleeping body. Plaintiff then felt a burning and shocking sensation over his entire body. On several other occasions, the CIA contractors pointed a microwave oven magnetron with a metal horn from the same balcony and shocked Plaintiff while he was in bed.

28. On one occasion in 2018, Plaintiff saw a male CIA contractor pointing a gun shaped device at his bedroom window. The CIA contractor then fired the device and a ball of energy came out of it, causing the windows in Plaintiff's bedroom to shake. Plaintiff believes that the device was a pulsed energy projectile weapon.

29. On one occasion in 2019, Plaintiff observed two CIA contractors pointing a laser microphone on a tripod at his bedroom window, while Plaintiff was speaking to someone over the phone. Azaiah Crosswhite then repeated parts of this private conversation back to Plaintiff over Snapchat.

30. On July 1, 2019, Plaintiff was lured onto a ferry and became the target of an attempted extrajudicial killing by Turkish intelligence ("MIT") agents in Izmir, Turkey, as the CIA had falsely communicated to MIT that Plaintiff was an ISIS member. [2]

---

[2] Plaintiff was told to board a ferry, tell nobody where he was going and leave his cell phone at home by a now-deceased Turkish intelligence informant named Ozkan Eroglu. When the ferry arrived at its destination, Plaintiff avoided getting kidnapped and having his body dumped in the ocean by asking a bystander to call an ambulance.

31. Plaintiff escaped from the MIT agents by hiding in Alsancak Nevvar Salih Isgoren hospital. When Plaintiff's name was entered into the emergency room computer, Azaiah Crosswhite's name and the words "Cock Sucker" appeared on the computer.[3] Five police cars and a group of MIT agents then came to the hospital, and Plaintiff was forcibly injected with haloperidol.

32. The attempt by CIA officers to have Plaintiff killed on July 1, 2019, violates Part 2.11 of Executive Order 12333 (prohibition on assassinations) and 18 USC § 241 (conspiracy against rights).

33. On July 6, 2019, Plaintiff was abducted from the Munich Airport police station in Germany by fake Bavarian State Police officers (MIT agents) and taken to an unauthorized black site operated by Turkish intelligence in Taufkirchen Vils, Germany (48.345942, 12.137754).[4] Plaintiff was then thrown in a neurotoxic gas room. This was videotaped and livestreamed as a "destruction video" to a group of CIA officers, Azaiah Crosswhite (a FBI CHS and CIA informant), Jared Fazah (a CIA informant), and Justin Anglin (a CIA cover agent). Delta Force soldiers were waiting on the second floor of the building in order to drive Plaintiff to a US military base and place him on a rendition plane to Anchorage Airport. The DOJ planned on indicting Plaintiff in the District of Alaska shortly before his rendition to Anchorage, however, the rendition was canceled.[5]

---

[3] Emergency room computers at public hospitals in Turkey are connected to a system called POLNET, which is used for checking whether a patient has any active criminal warrants or appears on a wanted list.
[4] Other individuals were kidnapped within Germany by Turkish intelligence agents wearing fake police uniforms and permanently brain damaged at this location. Although the aforementioned building is part of a legitimate psychiatric hospital, Turkish intelligence took over the management of this facility at some point in time prior to 2019.
[5] Plaintiff was "saved" by a staff member who turned off the fan in his room and the rendition was canceled, but if the plan had actually been carried out, prosecutors in the District of Alaska were going to claim that Plaintiff was mentally incompetent and force him to take a plea deal for approximately 10 years in prison, as part of the U.S. Government's covert and unlawful plan to neutralize and "get rid" of Plaintiff. Plaintiff's mother was also offered 5 million dollars in Bitcoin by the CIA to conceal the torture and rendition.

Plaintiff does not believe that the German government authorized this operation.[6] Plaintiff was also tortured at the black site by Turkish intelligence. A woman at the black site would play tape loops over a loudspeaker, point to a photograph of a man with Down syndrome and say "this is you" to Plaintiff, and use a psychotronic weapon which looked like a stereo speaker to give Plaintiff epileptic seizures.

34. In October 2019, Plaintiff received multiple email messages from FBI Special Agent Elliott Peterson. One of these messages asked Plaintiff to call Peterson so that they could talk about the Satori botnet case, and another one of these messages implied that Peterson was attempting to get the Turkish police to cooperate in the investigation against Plaintiff.

35. In November 2019, Plaintiff attempted to board a flight to Germany from Antalya Airport in Turkey. Plaintiff was interrogated by the Turkish police, and Plaintiff noticed that one of the Turkish police officers had a document open on their phone. This document had the logo of the CIA, classification markings, and text. Plaintiff believes that the CIA sent out an alert to multiple countries stating that he is an ISIS terrorist.

36. Several of Plaintiff's friends and associates have also been targeted by the CIA, in some cases illegally. O.H.A., a US citizen and resident of Dearborn Heights, Michigan, was interrogated at Ben Gurion Airport in Israel by CIA agents in 2018 and had his rental home in Switzerland broken into and ransacked. O.H.A. later began to be visited by FBI agents on a weekly basis and his cellular phone was hacked by the CIA using 0-day exploits. O.H.A. was intimidated by the FBI agents and told to stop communicating with Plaintiff. K.B., a US citizen and resident of North Liberty, Iowa, was illegally arrested by

---

[6] Germany's Federal Criminal Police Office (Bundeskriminalamt) told Plaintiff that they had no advance knowledge of the kidnapping and rendition operation. A request for information was later sent to the FBI by the Bundeskriminalamt but no response was received.

his local police department in 2018 and driven to a CIA-run mental hospital approximately 3 hours away. K.B. was then held in a neurotoxic gas room for several hours and later taken by ambulance to another hospital, where he was falsely diagnosed with schizophrenia. V.I.L., a Bulgarian citizen and resident of Sofia, Bulgaria, caught CIA contractors with surveillance equipment in a vacant apartment near his home after trying to assist Plaintiff in 2019.

### COUNT I - F-2019-02258, F-2020-00756: Violation of FOIA/PA - CIA

37. Plaintiff repeats and realleges paragraphs 1-36 inclusive.

38. On August 14, 2019, Plaintiff filed a FOIA/Privacy Act request with the CIA ("F-2019-02258") seeking all records on himself and additional records related to his surveillance, harassment, kidnapping and torture.

39. Approximately one month later, Plaintiff received a reply from the CIA for F-2019-02258. The CIA replied with a Glomar response for the portion of F-2019-02258 asking for all records on Plaintiff, and requested additional information regarding the other items in Plaintiff's request.

40. Plaintiff mailed the additional information that was requested from him (a copy of his kidnapping story) to the CIA.

41. On February 14, 2020, Plaintiff received a final response for F-2019-02258. Plaintiff timely appealed this response and the prior denial of his Privacy Act request to the CIA on the same day.

42. In 2020, Plaintiff filed a FOIA request ("F-2020-00756") with the CIA seeking information pertaining to the use of neurotoxic gas rooms by the CIA and foreign intelligence services, and also "retard-making"[7].

43. Plaintiff later received a final response for F-2020-00756, which he appealed on March 19, 2020.

44. More than 20 working days have passed since the CIA received Plaintiff's appeals for F-2019-02258 and F-2020-00756, and the CIA has not yet made a final determination on the appeals, in violation of 5 USC § 552(a)(6)(A)(ii).

45. Pursuant to 5 USC § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted his administrative remedies for F-2019-02258 and F-2020-00756.

46. Plaintiff was denied access to records concerning himself, in violation of 5 USC § 552a(d)(1).

47. Pursuant to 50 USC § 3141(c)(1), operational files are not exempt from being searched for responsive records concerning Plaintiff, as Plaintiff is a US citizen who is requesting information on himself pursuant to the provisions of FOIA and the Privacy Act.

48. The CIA is improperly withholding records responsive to Plaintiff's requests.

### COUNT II - 1466006-001: Violation of FOIA/PA - FBI and DOJ

---

[7] "Retard-making" is the little-known practice of giving individuals who learn government secrets brain damage using neurotoxin injections. This procedure is frequently performed in Turkish public hospitals by doctors who cooperate with the secret services. Plaintiff speculates that the substances used could include domoic acid, which causes amnesic shellfish poisoning, or strychnine.

49. Plaintiff repeats and realleges paragraphs 1-36 inclusive.

50. In 2020, Plaintiff filed a FOIA/PA request ("1466006-001") with the FBI seeking any and all records on himself.

51. The FBI later responded to 1466006-001 and claimed that no records regarding Plaintiff were found in their systems, even though records pertaining to do actually exist.

52. On September 18, 2020, Plaintiff filed a timely appeal for 1466006-001 through the DOJ Office of Information Policy's Entellitrak portal.

53. Plaintiff's appeal number for 1466006-001 is A-2020-01946.

54. More than 20 working days have passed since Plaintiff submitted his appeal for 1466006-001 and the DOJ has not released any records to Plaintiff or responded in any way.

55. Pursuant to 5 USC § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted his administrative remedies for 1466006-001.

56. Plaintiff was denied access to records concerning himself, in violation of 5 USC § 552a(d)(1).

57. The FBI and DOJ are improperly withholding records responsive to Plaintiff's request.

### COUNT III - 2021-007: Violation of FOIA/PA - USSOCOM

58. Plaintiff repeats and realleges paragraphs 1-36 inclusive.

59. On October 16, 2020, Plaintiff submitted a FOIA/PA request through the USSOCOM website requesting the following information:

- All information on John Erin Binns DOB 01/30/2000 (CIA code name RAVEN).
- All information regarding the Delta Force operation in Germany on July 6, 2019

60. Tracking number 2021-007 was assigned to Plaintiff's FOIA/PA request.

61. More than 20 working days have passed since Plaintiff submitted his initial request to USSOCOM and they have not released any records to Plaintiff or responded in any way, in violation of 5 USC § 552(a)(6)(A)(i).

62. Plaintiff was denied access to records concerning himself, in violation of 5 USC § 552a(d)(1).

63. USSOCOM is improperly withholding records responsive to Plaintiff's request.

## COUNT IV - 21-014: Violation of FOIA/PA - DOJ

64. Plaintiff repeats and realleges paragraphs 1-36 inclusive.

65. On October 8, 2020, Plaintiff submitted a FOIA/PA request to the DOJ National Security Division ("NSD") via email at nsdfoia@usdoj.gov requesting any and all records on himself, and any and all records in which his name is mentioned. Plaintiff's request was later assigned tracking number 21-014.

66. More than 20 working days have passed since Plaintiff submitted his initial request to the DOJ NSD and they have not released any records to Plaintiff or responded in any way, in violation of 5 USC § 552(a)(6)(A)(i).

67. Plaintiff was denied access to records concerning himself, in violation of 5 USC § 552a(d)(1).

68. The DOJ is improperly withholding records responsive to Plaintiff's request.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Defendants CIA, DOJ, FBI and USSOCOM have violated FOIA/PA.

(2) Order Defendants CIA, DOJ, FBI and USSOCOM to conduct thorough searches for the records that Plaintiff has requested.

(3) Order Defendants CIA, DOJ, FBI and USSOCOM to produce all records that are responsive to Plaintiff's FOIA/PA requests and Vaughn indices of any withheld records.

(4) Refer this matter to the US Attorney's Office for prosecution due to violations of 18 USC § 2261A (stalking), 18 USC § 2332a (use of weapons of mass destruction), and 18 USC § 241 (conspiracy against rights).

(5) Grant any further relief as this court may deem just and proper.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**/s/ John Erin Binns**
John Erin Binns
1775/4 Sk No 3/1
Karsiyaka, Izmir
35580
Turkey

binnsjohn84@gmail.com
+905488575356